# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Wilson and Atlantic Bullion & Coin, Inc., ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 8:15-cv-02368-JMC |
| v. ) ) | **ORDER AND OPINION** |
| Roswell Wilson, ) ) | |
| Defendant. ) ) | |

Plaintiff Beattie B. Ashmore ("Plaintiff"), in his capacity as court-appointed receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed the instant action against Defendant Roswell Wilson ("Defendant") to recover grossly excessive payments received by Defendant as a return on his investment in the Wilson-AB&C Ponzi scheme.[1]

This matter is before the court on Defendant's Motion to Certify Questions of State Law (ECF No. 36) pursuant to Rule 244 of the South Carolina Appellate Court Rules ("SCACR"), to which Plaintiff filed a Response in Opposition (ECF No. 38). Defendant filed a Reply to Plaintiff's Response in Opposition. (ECF No. 39.)

The court finds that Defendant's proposed certified questions to the South Carolina

---

[1] "A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program." *United States v. Wilson*, Cr. No. 8:12-cr-00320-JMC, ECF No. 1-1 at 2 ¶ 6 (D.S.C. Apr. 4, 2012). In *Wilson,* the United States alleged that Wilson, through AB&C, "orchestrated a Ponzi scheme whereby he led investors to believe that he was investing their money in silver, when, in fact, Wilson was not buying silver but using the money for his personal gain . . . [and] [t]o keep the Ponzi scheme going, Wilson also made payments to earlier investors to whom Wilson made representations that their investments were earning high rates of return– sometimes in excess of 200 percent. *Id.* at ECF No. 17 at 1.

Supreme Court are not outcome determinative. Therefore, the court **DENIES** Defendant's Motion to Certify Questions of State Law (ECF No. 36) for the following reasons.

## I. LEGAL STANDARD

South Carolina Appellate Court Rule 244 provides that the South Carolina Supreme Court:

> [I]n its discretion may answer questions of law certified to it by any federal court of the United States . . . when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

SCACR § 244(a).

Further, the certification order must present (1) "the questions of law to be answered"; (2) "all findings of fact relevant to the questions certified"; and (3) "a statement showing fully the nature of the controversy in which the questions arose." SCACR § 244(b).

Additionally, the Fourth Circuit has held that "where there is no case law from the forum state which is directly on point, the district court [must] attempt[] to do as the state court would do if confronted with the same fact pattern." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). "Only if the available state law is clearly insufficient should the court certify the issue to the state court." *Id*. Further, "federal courts should take care not to burden their state counterparts with unnecessary certification requests." *Boyter v. Comm'r*, 668 F.2d 1382, 1385 n.5 (4th Cir. 1981). Consequently, if the answer to the issue sought to be certified is reasonably clear, no need for certification exists.

## II. ANALYSIS

*A. Defendant's Argument*

Defendant asserts that questions related to his causes of action against Plaintiff for

violation of (1) the Statute of Elizabeth and (2) principles of unjust enrichment must be certified to the South Carolina Supreme Court. (ECF No. 36-1 at 2.) Specifically, Defendant claims that "[t]he Statute of Elizabeth is intended to prevent persons from defrauding creditors by transferring their assets to third-parties, and later getting those assets returned. It was never designed to decide issues between equally innocent, defrauded creditors and the [Court] has never decided this important public policy issue." (ECF No. 36-1 at 2.) Additionally, Defendant argues that "[t]here has never been a South Carolina Supreme Court decision holding that equally innocent investors who both made and lost money should somehow take the profits from one and give to another." (ECF No. 36-1 at 2.) Thus, Defendant proposes the following certified questions verbatim:

> 1. Whether South Carolina law allows a Court to grant equitable relief, under the common law theory of unjust enrichment, against one investor in a Ponzi scheme in favor of another investor where (1) all investors took an equal risk; (2) the investors' contributions were immediately put at risk when invested and the investors recognized the time value of their money; (3) the proceeds appeared to be the very performance which was promised; (4) the investors would have received similar benefits if the scheme had been a legitimate investment; (5) the other investors were not plaintiffs in the case and were equally "at fault" in trusting an investment advisor who ran the Ponzi scheme; (6) the investors reasonably changed position in reliance on the benefit so that restitution would be inequitable; (7) the investors who reasonably changed position would be placed under significant hardship if restitution was required of them; and (8) the perpetrator of the scheme suffered no injury and had no justifiable claim to recover money from the investors to whom it made the original conveyances when the continued existence of the scheme benefited from the payments to some investors in order to attract later investors.
>
> 2. Whether South Carolina law allows a Court to require investors to disgorge the proceeds of their investments in a Ponzi scheme after (1) they became final transactions and (2) the investors had changed their position in reliance upon the finality of the transaction.
>
> 3. Whether the doctrines of in pari delicto and unclean hands apply to the potential beneficiaries of an action brought by a Receiver when they were equally "at fault" for trusting an investment advisor who ran a Ponzi scheme.

> 4. Whether South Carolina's Statute of Elizabeth (S.C. Code Ann. § 27-23-10) allows for recovery when funds were paid to one creditor rather than another when its stated aim is to prevent persons from defrauding all their creditors by transferring assets to a third person.
>
> 5. Whether it is a matter for the South Carolina legislature, and not the Courts, to decide if final financial transactions can be disturbed in South Carolina to redistribute funds from a Ponzi scheme.
>
> 6. Whether South Carolina law recognizes that when both parties to a dispute have an equitable interest, the first to acquire an equitable interest prevails.
>
> 7. Whether under South Carolina law, the interests of justice demand the use of equitable tolling to expand the liability of investors in an investment that was later determined to be a Ponzi scheme.

(ECF No. 36 at 1-2.)

*B. Plaintiff's Response*

In response, Plaintiff argues that, under Rule 244, the law is "not clearly insufficient" because this court previously applied South Carolina law to the instant Ponzi scheme. (ECF No. 38 at 8.) Further, Plaintiff claims that he is authorized by the court to recover money from Defendant, which is in accordance with South Carolina law. (*Id.* (citing *Ashmore v. Taylor*, 2014 U.S. Dist. LEXIS 162147, at *9-10 (D.S.C. Nov. 18, 2014)).) Finally, Plaintiff asserts that the certification of Defendant's questions constitutes an undue burden on the South Carolina Supreme Court. (ECF No. 38 at 11 (citing *Boyter v. Comm'r*, 668 F.2d 1382, 1385, n.5 (4th Cir. 1981)).)

*C. The Court's Determination*

The court is not persuaded that Defendant's proposed certified questions are outcome determinative. Defendant claims that certifying the questions is necessary because "the highest Court in the state can set the public policy for all present and future South Carolinians." (ECF

4

No. 36-1 at 3.) As a result, "certifying these novel questions of law to the South Carolina Supreme Court may be determinative of the causes of action." (*Id.*)

However, the Statute of Elizabeth provides that "[e]very gift, grant, alienation, bargain, transfer . . . made to or for any intent or purpose to delay, hinder, or defraud creditors and others . . . must be deemed and taken . . . to be clearly and utterly void." S.C. Code Ann. § 27-23-10(A) (2016). Next, unjust enrichment "is an equitable doctrine, akin to restitution, which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." *Ellis v. Smith Grading & Paving, Inc.*, 294 S.C. 470, 473 (S.C. Ct. App. 1988).

Defendant fails to demonstrate how answers to the proposed fact-specific questions will absolve him from liability as a "net winner." Moreover, the court is unconvinced by Defendant's presumption that the victims of the Wilson-AB&C Ponzi Scheme are "equally innocent investors." South Carolina has sufficient controlling precedent regarding Ponzi schemes under the Statute of Elizabeth and the doctrine of unjust enrichment, which allows Plaintiff to recover "profits" from net winners in this case. Therefore, Defendant fails to set forth novel questions of law to be certified to the South Carolina Supreme Court.

### III. CONCLUSION

Based on the aforementioned reasons, the court **DENIES** Defendant's Motion to Certify Questions of State Law (ECF No. 36).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

November 28, 2016
Columbia, South Carolina